Figueroa. May it please the Court, I'm Christopher Booth and I represent Louis Figueroa of Mourning. Your Honors, I would like to begin by speaking about two topics that span all of Mr. Figueroa's appellate arguments. And that is namely, one, the manner in which the trial court resolved the issues that came up, and two, its ultimate decisions. It's respectfully urged that the Court err in both regards. Beginning with the preclusion of the defense evidence regarding impeachment of the main witness. The backdrop for these decisions was essentially, with respect to the conspiracy charge, a one witness identification case. Informant Frank Hilton was the only person who testified that Louis Figueroa received drugs of any kind. And to show how close a case this was, while testimony was presented for just five days, the jury took seven days to reach its verdict. And that verdict was a partial rejection of what the informant said. The informant had testified he gave heroin and cocaine to Mr. Figueroa. The jury found the defendant not guilty with respect to the heroin charges. Clearly- Isn't that against you? First of all, I thought he was impeached to the help. There was all sorts of impeachment material. I mean, what more could you possibly want? And what you just said, that the jury actually reached a split verdict in part in your favor. Which meant that if the defense had the rest of the arsenal to use against Mr. Hilton, they would have done even better. And those impeachments were on material issues. For example, I think it can be agreed that the number of kilos that a person transfers is an important number. At trial, the witness testified the number was eight. However, we had impeachment material that he had told the prosecutors in preparation for trial that the number was nine. The court did not allow impeachment of that topic, as well as the informant's veneer that he presented on direct testimony that he was a reformed perjurer. On direct testimony, knowing that he would be attacked for a prior perjury, an unrelated case. Prosecution elicited testimony from the witness that he lied about certain things at the prior trial, but told the truth about others. And the important factor being the presence and the use of a gun. At this trial, the witness said, I never had a gun in connection with the other case. And when I said that at the prior trial, that was true. But again, in the processions here, he told the prosecutors that he had a gun in that prior case. The gun was his, just as the drugs were his. This jury should have been told that he was lying to them on the stand as he spoke to them. Money, drugs, kilos, quantities, those are things that affect jurors' assessment of credibility of a witness. That's what is in the jury's sweet spot. Not issues of identification, as the judge said. The impeachment was properly set up. The government says that, among other things, that he perjured himself in a prior criminal trial. And that was elicited from the jury, among other lists of horribles. I understand that, Judge. But remember, in this case, the informant had a gun in his house. And his testimony was, well, the gun is there. I don't use guns. I don't know much about guns. Casting him as, again, a reformed, not such a bad guy that the jury should consider enhances credibility. When in his impeachment material, we could have proved that he lied about a gun in a prior occasion, that he had actually carried a gun during drug dealing. That's a different thing. You're a jury. You're looking at this guy and you're saying, well, he stores guns. He's not that bad. He used a gun during his drug dealing. The jury should have been known about that. And then, to emphasize the unfairness to the defendant, was on summation. The government, after blocking such impeachment, then turned around and argued strenuously that defense attorneys spent a lot of time talking about impeachment inconsistencies, but didn't hit any big ones. Talk about having your cake and eating it, too. You keep it out, and then you turn around and say, he didn't score any points. This same process and error occurred with the preclusion of the defense expert on identification. The court had a pretrial hearing. There was an improper identification done. The informant had no prior familiarity with the defendant. The police chose to show him a single photo, thereby suggesting the identification. Some months later, they did a- Ten months later, they did a photographic array. Of course, in the photographic array, the only person who was in there that the witness had seen before was the photo of Mr. Figueroa. You mean the only person in the array? I assume an array implies that there were four, five, six photographs. Six, Your Honor. But of those six, only one is someone that he's seen before in the prior proper- Yeah, but he's seen before him ten months ago. I mean, if I had just seen somebody's photo on a license ten months ago, I don't think I'd recognize him ten months later. When it's been suggested to you by the people who are responsible for helping determine many years of your life, you would value that, and you would remember it. You know, the identification in this case is important because the witness- What expert? The expert wasn't going to testify to that. The witness was going to testify as to the proper police identifications. We all know why showing a witness one photo is an improper police identification, and we also know why showing them a belated photo array is essentially worthless, given the original impropriety. Wasn't it part of the court's reasoning that the mere fact that this witness had been a police officer does not make him an expert on identification procedures? That was, and we take great opposition to that. The witness had conducted thousands of identification procedures, including in homicide cases, as a New York City detective. 702 clearly says expertise can be borne of experience. What better experience could there be than doing thousands of procedures? Well, he might have been an expert in doing thousands of procedures, assuming that the New York City police did wonderful eyewitness photographic arrays, but so what? That's not what his expertise was going to be used for. On summation, the prosecution was allowed to argue. We had a witness. He testified. He told you the identification procedures were fine. I, the prosecutor, am arguing to you that the identification procedures were fine. Defense counsel had to argue that they were not fine, but had no witness to back it up, and therein lies the rub, and this is what happened with some of the other things in this case. The defense was left to establish its points through the people's witnesses. I want to quickly move on to the issue. Did you ask the court to instruct the jury on preferred procedures for photo identification? No, Your Honor. We asked for a typical identification charge, and then the arguments were made to the jury, but in the absence of having a witness to back it up, the charge was empty. I am running . . . You could have asked for a charge relating to the problems associated with a show-up. I mean, I often give . . . I have a separate charge for eyewitness identification that goes beyond the boilerplate and calls the jury's attention to the problems associated with eyewitness identification, but you didn't . . . you could have done that. I don't know that the judge was any more or less capable of doing that than the so-called expert. I don't know, Judge, but certainly I think we could all agree, from the defendant's perspective, having the evidence is far more important than having a charge that the jury may or may not accept. I want to just say that the way the court handled the impeachment evidence, if you recall, it invited counsel to do it through the case agent. Counsel told the judge that, given its concerns over the case agent, that he would not give the desired impeachment. Sure enough, the agent rejected the attempts at impeachment, thereby affirmatively damaging the defendant's case, requiring . . . making the impeachment all the more necessary. So, on the one hand, the court said, go ahead, try it out with this witness. When it failed, and for the concerns of moving the trial along, the judge didn't allow it further. I want to conclude in my last minute talking about the removal of the juror and make this point. The juror did not ask to be removed, the deliberating juror. She expressed her concerns and her financial difficulties, but she didn't ask off, and she didn't say she would not be feared impartial. To show you that she could deliberate, after the court spoke to her, the court returned her to the deliberations and had the jury resume. We continued arguments, the case ended, and the jurors were sent home. At that point, she wasn't told she was removed. She didn't stand up and say, oh, I can't continue. What had happened if, when the judge returned to deliberations, ten minutes later they came out with a verdict? Would the court have said, oh, I can't accept this verdict because the juror was incapable of proceeding? No. The verdict would have been accepted and would have been urged by the people to be taken. The proof is in the pudding. She could deliberate, and she continued to deliberate, and she should not have been removed, because after she was removed, an alternate came in, and within a day, you had a guilty verdict. She was the lone holdout. Thank you, Mr. Booth. Your Honor, as I may have pleased the court, my name is Edward Diskian. I represented the government at trial and on appeal. With respect to the last issue that Mr. Booth raised, I just want to make clear that the district court established a very fulsome record indicating that the juror in question felt not only that she could not continue to participate in jury service, which at this point had gone beyond the timeline that the court had told jurors during voir dire we expected the trial to last, but also that she felt that it would interfere with her ability to concentrate and to participate in jury selection because of the financial hardship. And based on that record, we believe the district court did not abuse its discretion in finding that there was a basis for removing the juror. With that said, unless the court has other questions about the record below, from the government's perspective, the defendant has not identified any errors individually or collectively that warrant reversal of the jury's verdict. Thank you, Your Honor. Thank you very much. We'll reserve the decision.